## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Billy Perry, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> Bay & Bay Transportation Services, Inc., <br><br> Defendant. | Court File No. 22-cv-973 (JRT/ECW) <br><br><br> **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |

This case arises from a ransomware incident that occurred in or around November 2021, in which cybercriminals gained unauthorized access to portions of Bay & Bay Transportation Services, Inc.'s ("Bay & Bay") computer systems (the "Data Breach"). Plaintiff Billy Perry—who applied for employment with Bay & Bay's affiliate, Bay & Bay Transfer Co., Inc. ("B&B Transfer") and received notice regarding the Data Breach—purports to allege tort and contract claims for damages and other relief, and seeks to represent a nationwide class of all employees and consumers affected by the Data Breach.

Putative class actions like this one, filed quickly after a cyberattack, and based entirely (or almost entirely) on formulaic allegations of risks of future harm, have exploded in number over the last decade. But nearly all data breach litigation has a common problem: the plaintiffs have not suffered, and will not suffer, a concrete

pecuniary loss stemming from the data breach.  As a result, data breach plaintiffs cannot satisfy the "case or controversy" requirements of Article III, i.e. standing.

This case is no exception. Plaintiff's Complaint should be dismissed because he lacks standing.  Plaintiff does not and cannot allege an actual injury traceable to the Data Breach.  Instead, he generally alleges a mere risk of future harm that is insufficient to constitute an "injury-in-fact" under binding Supreme Court and Eighth Circuit precedent and he may not manufacture standing with allegations that he spent time and resources worrying about speculative risks of future harm, or that such worry has caused him anxiety.  Plaintiff's vague allegations regarding an alleged scam in which he sent money to freeze his bank account are insufficient to establish standing without factual allegations to suggest the alleged scam was fairly traceable to Bay & Bay's conduct.  Nor can Plaintiff rely on general allegations that his information suffered diminished value or that he lost the benefit of the bargain.  Finally, Bay & Bay has provided and Plaintiff has enrolled in a program that provides him with identity threat monitoring, identity theft insurance reimbursement coverage, and fully-managed identity theft recovery services. As such, Plaintiff cannot allege a concrete injury or impending risk of future harm that has not already been fully redressed by the benefits provided by Bay & Bay.

In the alternative, the Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.  As to all three of his claims, Plaintiff fails to allege sufficient facts to support the element of damages.  For his negligence and negligence per se claims, he similarly fails to plead facts to establish causation.  Further, Plaintiff's negligence per se claim fails as a matter of law because the statute on which he bases it,

the Federal Trade Commissions Act, does not establish a fixed standard of care and there is no private right of action under the statute.  Finally, Plaintiff does not allege any facts to establish that Bay & Bay entered into an implied contract with Plaintiff, who was merely a job applicant, much less that he provided the requisite consideration.

Bay & Bay respectfully requests that the Court dismiss Plaintiff's Complaint.

## FACTUAL BACKGROUND

Bay & Bay is a nationwide trucking and logistics company that delivers supply chain solutions to businesses. Complaint [Doc. No. 1-1] ("Compl.") ¶ 19. Plaintiff alleges that he applied for employment with Bay & Bay and in so doing provided it with Private Information.[1]  *Id.* ¶ 17.  Although Plaintiff defines "Private Information" generally with a list of sensitive personal information, *id.* ¶ 17, he does not allege specifically which categories of "Private Information" he provided to Bay & Bay, *id.* ¶ 85.  Plaintiff does not allege that he was ever actually employed by Bay & Bay, that he ever purchased goods or services from Bay & Bay, that he ever entered information through Bay & Bay's website, or that he ever provided Bay & Bay with his bank account information.

In fact, Plaintiff actually applied for employment as a driver with Bay & Bay's separately incorporated affiliate, B&B Transfer, not Bay & Bay.[2]  Declaration of Wade

---

[1]   Bay & Bay vigorously denies the allegations contained in Plaintiff's Complaint, but treats the allegations as true, as it must, for purposes of its facial attack on standing and Rule 12(b)(6) motion.  As discussed below, Bay & Bay supplies information outside the pleadings only for purposes of its alternative factual attack on Plaintiff's standing.

[2]   While Plaintiff has sued the wrong entity, the statements and arguments herein, and all bases for this motion to dismiss, apply equally to B&B Transfer.  *See generally* Anderson Decl.

Anderson ("Anderson Decl.") ¶¶ 2-3.  And he never worked for either company.  *Id.* Because he was never employed by them, Plaintiff never provided Bay & Bay or B&B Transfer with, and neither company ever possessed, any of Plaintiff's banking, financial account, or direct deposit information.  *Id.* ¶ 5.

In or around November of 2021, cybercriminals gained unauthorized access to portions of Bay & Bay's computer systems.  Compl. ¶ 1.  As a result, Plaintiff alleges the criminals obtained his information.  *Id.* ¶¶ 2, 100.  After Bay & Bay discovered suspicious activity on its systems, it quickly launched an investigation and notified all individuals who were potentially affected, including Plaintiff.  *Id.* ¶¶ 17, 33; Anderson Decl. Ex. 1.  In the notice, Bay & Bay offered each person whose personally-identifiable information was potentially exposed in the Data Breach complimentary enrollment in IDX Privacy, a fraud and identity monitoring services program which includes $1,000,000 of no-deductible identity theft insurance reimbursement coverage and fully-managed identity theft recovery services for each person.  Compl. ¶ 98; Anderson Decl. ¶ 6, Exs. 1-2.  Plaintiff enrolled in the IDX Privacy Program paid for by Bay & Bay, but has not given IDX notice of any incident of fraud or identity theft, or submitted any identity theft insurance claims under the coverage provided to him by Bay & Bay. Comp. ¶ 88; Anderson Decl. ¶¶ 8-10.

Plaintiff now brings this action, alleging claims for negligence, negligence per se, and implied contract.  Compl. ¶¶ 124-49.  In an attempt to prop up his deficient claims, Plaintiff devotes several pages of the Complaint to setting forth allegations concerning what types of identity theft a consumer might experience, how having personal

information disclosed in a criminal data incident might affect their risk of such experience, and what generalized types of effects consumers might experience if they do become victims of attempted identity fraud. *Id.* ¶¶ 64-84. He continues that he, and other members of the putative class, generally are at "substantially increased risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft." *Id.* ¶ 104. Notably, Plaintiff does not allege that he has experienced any of those specific types of fraud. Instead, Plaintiff claims he paid $500 toward a purported phone scam where criminals impersonated his bank. *Id.* ¶ 89. Although Plaintiff blames the Data Breach, he provides no allegations on the timing of this alleged scheme or any other specific facts connecting it to the Data Breach beyond his mere unfounded "belie[f]." *Id.*

Plaintiff also alleges that he is generally at a "substantially increased risk of being targeted for future phishing, data intrusion and other illegal schemes" and that he "*may* also incur out-of-pocket costs for protective measures such as credit monitoring." *Id*. ¶¶ 105-06 (emphasis added). In other words, Plaintiff does not allege that he *has* suffered an actual concrete injury connected to the cyber-attack, but that he *might* (or might not).

## LEGAL ARGUMENT

### I.     PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING.

"Article III of the Constitution limits the jurisdiction of the federal courts to cases or controversies." *In re SuperValu, Inc.*, 870 F.3d 763, 767-68 (8th Cir. 2017)

("*Supervalu I*") (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  To establish standing at the pleadings stage, a plaintiff must clearly allege facts demonstrating that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Robins*, 578 U.S. at 338.

A defendant may challenge a plaintiff's standing in two different ways, facially and factually.  *See Osborn v. United States*, 918 F.2d 724, 729-30 and n.6 (8th Cir. 1990).  A facial attack, as the label implies, challenges the plaintiff's standing allegations on their face.  When considering a facial attack on standing, the Court should give the plaintiff's allegations the same deference it would on a Rule 12(b)(6) motion.  *Id*. at 729 n.6.  Plaintiff's factual allegations must raise a reasonable and plausible inference that Article III standing is satisfied; legal conclusions couched as facts and "threadbare allegations" are insufficient.  *Hawse v. Page*, 7 F.4th 685, 688-91 (8th Cir. 2021).

In a factual attack, the defendant introduces facts not contained in the pleadings and which the defendant contends defeat the plaintiff's standing.  When considering a factual attack, the Court may consider matters outside the pleadings without requiring the procedures for a summary judgment motion under Rule 56, and the plaintiff is not afforded the pleading deference applicable under Rule 12(b)(6).  *Osborn*, 918 F.2d at 729 n.6.

Here, Bay & Bay presents both a facial attack and a factual attack on Plaintiff's standing.  Bay & Bay maintains that Plaintiff's Complaint allegations are insufficient to confer standing on their face.  Alternatively, Bay & Bay submits the declaration of its

Chief Information Officer and Chief Technology Officer, Wade Anderson, to introduce facts not contained in Plaintiff's Complaint that are fatal to Plaintiff's Article III standing. For this factual attack on Plaintiff's standing, the Court should not afford his allegations Rule 12(b)(6) deference. *Id.*

To establish injury in fact, a plaintiff must show that he suffered an injury "that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Robins*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A future injury may constitute an injury in fact, but only if the plaintiff demonstrates that "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Supervalu I*, 870 F.3d at 769 (quotation omitted). The threat must not be speculative and "[a]llegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation omitted).

Here, in an attempt to plead an injury, Plaintiff throws in the kitchen sink. In conclusory fashion, he alleges that he suffered injury in the form of (1) an increased risk of fraud, identity theft and out of pocket costs for protective measures, Compl. ¶¶ 95, 104, 107; (2) lost time spent monitoring his bank and credit accounts, *id.* ¶ 88; (3) diminution in the value of his private information, *id.* ¶ 93; (4) the $500 he voluntarily paid toward a telephone scam not clearly connected to the Data Breach, *id.* ¶ 89; and (5) loss of the "benefit of the bargain," *id.* ¶ 108. Although Plaintiff's allegations are facially insufficient to establish standing, Bay & Bay presents the Court with additional facts challenging Perry's standing: 1) that Perry was not an employee and did not provide Bay & Bay with his bank information, making it implausible that the alleged bank

impersonation scam is fairly traceable to Bay & Bay's conduct; and 2) Bay & Bay offered, and Perry accepted, no-cost enrollment in a credit monitoring and identity protection program including a comprehensive no-deductible $1,000,000 identity theft reimbursement and recovery insurance policy, which fully redresses Plaintiff for potential injuries. On the record before the Court, whether considered facially or factually, Perry has failed to establish Article III standing.

**A. Plaintiff Has Not Alleged An Injury That Is Certainly Impending.**

Plaintiff's allegations of the threat of future injury are not an injury in fact because Plaintiff fails to establish that the threat of injury is certainly impending. Although Plaintiff discusses the potential that criminals *might* use his information to steal his identity or commit fraud, Compl. ¶¶ 64-84, 95, these generalized and contingent risks are too speculative to establish an injury in fact. In order for Plaintiff to suffer an injury, a hacker would have to "(1) read, cop[y], and underst[and] [his] personal information; (2) intend[] to commit future criminal acts by misusing the information; and (3) [be] able to use such information to the detriment of [Plaintiff] by making unauthorized transactions." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011). This "highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Clapper*, 568 U.S. at 410; *see also Reilly*, 664 F.3d at 42 (concluding plaintiffs' allegations of hypothetical, future injury are insufficient to establish standing).

Indeed, as the Eighth Circuit recognized in *Supervalu I*, allegations that criminals are buying and selling information, and that data breaches facilitate identity theft are not sufficient to establish that the risk of plaintiffs suffering future identify theft is

substantial.  870 F.3d at 769-72; *see also George D. v. NCS Pearson, Inc.*, No. CV 19-2814 (JRT/KMM), 2020 WL 3642325, at *2 (D. Minn. July 6, 2020) (rejecting claim that theft of personal information "increased risk of fraud, identity theft, bullying, shaming, social engineering, tracking, or other means of targeting" and sufficiently alleges future harm).  This is true despite the fact that the Data Breach may have involved more "sensitive" information such as birth dates and social security numbers.  *See Reilly*, 664 F.3d at 43 ("[A]llegations of an increased risk of identity theft resulting from a security breach [which included social security numbers, dates of birth, and bank account information were] insufficient to secure standing."); *NCS Pearson, Inc.*, 2020 WL 3642325, at *3 (finding that even if a plaintiff's birthdate was stolen "that piece of information, on its own, does not create a substantial risk that Plaintiff will suffer from identity theft"); *Legg v. Leaders Life Ins. Co.*, No. CIV-21-655-D, 2021 WL 5772496, at *8 (W.D. Okla. Dec. 6, 2021) ("[A] data breach – even one that was intentional or involved sensitive information – does not necessarily equate to a concrete injury.").

Similarly, Plaintiff's allegations that he might have to incur out-of-pocket costs in the future to prevent or respond to fraud is mere speculation.  There is nothing to suggest that this threatened injury is certainly impending, especially in light of the fact that Bay & Bay has offered complimentary fraud and identity monitoring services for up to twelve months.  Compl. ¶ 98.  And even if Plaintiff had incurred such costs, "time and money expenditures to monitor … financial information do not establish standing, because costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts" are not "actual injuries" sufficient to confer standing.  *Reilly*, 664 F.3d at

46 ("[P]rophylactically spen[ding] money to ease fears of [speculative] future third-party criminality ... is not sufficient to confer standing."); *see also Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1344-45 (11th Cir. 2021) (voluntary mitigation costs and time spent safeguarding accounts following data breach does not establish standing).

Similarly, Plaintiff's allegations related to his self-induced harm of "lost time, annoyance, interference and inconvenience" and "anxiety and increased concerns," Compl. ¶ 94, cannot establish injury in fact. *See Clapper*, 568 U.S. at 416 (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"); *Supervalu I*, 870 F.3d at 771 ("Because plaintiffs have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury.").

### B. The Alleged Diminished Value Of Private Information Also Does Not Establish Injury.

Plaintiff's sparse and vague allegations regarding "diminution in the value" of his private information also does not establish an injury in fact because Plaintiff has not provided any factual allegations supporting a reasonable inference that the private information has legitimate independent value, or that value has diminished. Throughout his Complaint, Plaintiff claims that his private information has "value," but he does not attempt to explain how the information has independent, legitimate value or what the value is.

Instead, he appears to allege that his information has value to criminals because they can use it to commit fraud, and because the information is already available to criminals, the value of that information has diminished.  Compl. ¶¶ 68, 76, 79.  But Plaintiff would only be able to obtain the "value" of his personal information if he were to sell it on the black market; in other words, the information only has value if Plaintiff decides to participate in fraud.  Plaintiff cannot credibly contend that he can recover damages because if he decides to enable criminal activity, it will be less profitable.

Even if he could recover for this diminished value, Plaintiff does not allege that he intends to sell his information on the black market.  *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30 (D.D.C. 2014) ("As to the value of their personal and medical information, Plaintiffs do not contend that *they* intended to sell this information on the cyber black market in the first place, so it is uncertain how they were injured by this alleged loss.").  What is more, Plaintiff fails to allege any facts that would demonstrate his private information had higher value before the Data Breach than it does now.  *See In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 954 (D. Nev. 2015) ("Even assuming that Plaintiffs' data has value on the black market, Plaintiffs do not allege any facts explaining how their personal information became less valuable as a result of the breach or that they attempted to sell their information and were rebuffed because of a lower price-point attributable to the security breach.").

### C. Plaintiff Fails To Plausibly Allege That His $500 Payment Is Fairly Traceable To The Data Breach.

Plaintiff's allegation that he sent money toward a scam transaction as a result of the Data Breach, Compl. ¶ 89, is conclusory, speculative, and cannot support a reasonable and plausible inference that he has suffered an injury in fact that is fairly traceable to the challenged conduct of Bay & Bay.  "An injury is fairly traceable if the plaintiff shows a causal connection between the injury and the conduct complained of that is not the result of the independent action of some third party not before the court."  *Supervalu I*, 870 F.3d at 768 (cleaned up).

Although Plaintiff alleges that he "believes" hackers used his private information to contact him, he fails to plead any facts upon which he bases that "belief."  Compl. ¶ 89.  It is not clear exactly what private information Plaintiff believes the criminals used or that the information was included in the Data Breach.  In fact, Plaintiff never alleges what specific private information he supplied to Bay & Bay in his job application.  He certainly does not allege that he provided any bank account information to Bay & Bay that would plausibly connect this alleged bank impersonation scam to the Data Breach or Bay & Bay's conduct.  Indeed, he did not (and cannot) allege such facts because, in fact, he never provided Bay & Bay (or B&B Transfer) with his bank information.  Anderson Decl. ¶ 5.

Plaintiff does not even alleged when this purported scam occurred.  As such, Plaintiff's conclusory allegation that he fell victim to this scam "as a result of the Data Breach" is pure speculation, insufficient to plausibly suggest that Plaintiff suffered an

injury fairly traceable to Bay & Bay. *See Hawse*, 7 F.4th at 691 ("The assertion that an injury was 'a result' of the County's action is a threadbare allegation of an element of standing" and could not establish standing); *Legg*, 2021 WL 5772496, at *6 ("[T]he receipt of phishing emails, while perhaps consistent with data misuse, does not plausibly suggest that any actual misuse of Plaintiff's personal identifying information has occurred." (quotation omitted)).

### D. Plaintiff Cannot Establish Standing By Claiming He Was Denied The Benefit Of The Bargain.

Plaintiff cannot claim that he was injured by the loss of the benefit of the bargain because Plaintiff was not a consumer with respect to Bay & Bay. Plaintiff alleges that he and putative class members "overpaid for a service or product," Compl. ¶ 108, which is puzzling because there are no allegations that Plaintiff made any payments to Bay & Bay or that Bay & Bay provided any service or product to Plaintiff. Indeed, Plaintiff's factual allegations indicate that he was merely a job applicant, not a customer. Further, there are no specific allegations showing that this unknown "service or product" had a diminished value as a result of the Data Breach. *In re SuperValu, Inc.*, No. 14-MD-2586 ADM/TNL, 2016 WL 81792, at *8 (D. Minn. Jan. 7, 2016) (rejecting loss of benefit of bargain argument where plaintiffs failed to allege "Data Breach diminished the value of the groceries or other goods they purchased"), *rev'd in part on other grounds by* 870 F.3d 763 (8th Cir. 2017); *Chambliss v. Carefirst, Inc*, 189 F. Supp. 3d 564, 572 (D. Md. 2016) (plaintiffs did not establish a benefit-of-the-bargain loss where there were "no allegations that the data breach diminished the value of the health insurance they purchased").

### E. Plaintiff Lacks Standing Because He Accepted Bay & Bay's Prelitigation Offer Of Comprehensive Identity Theft Insurance Coverage.

Plaintiff also lacks standing because his alleged injuries have been fully redressed by a no-deductible $1,000,000 insurance policy provided at no cost to him by Bay & Bay. Plaintiff alleges that he was provided "credit monitoring" by Bay & Bay, and admits that he accepted and enrolled in the program. Compl. ¶ 88. Plaintiff disparages the protection provided by Bay & Bay, asserting that Bay & Bay "has merely offered Plaintiff and Class Members complimentary fraud and identity monitoring services [that] does nothing to compensate them." *Id.* ¶ 98. But Plaintiff's description of the offering as a mere "credit monitoring" program that does not compensate putative class members for damages is materially incomplete and inaccurate.

As part of its data breach response, and prior to this litigation, Bay & Bay notified and offered Plaintiff—and all putative class members—enrollment, at no cost to them, in a credit monitoring and identity theft insurance program administered by Bay & Bay data breach response vendor IDX. Compl. ¶¶ 86, 88; Anderson Decl. Ex. 1.[3] Plaintiff accepted this offer. Compl. ¶ 88; Anderson Decl. ¶ 8. He now fails to allege any facts that even if assumed to be true, would constitute an injury-in-fact not fully redressed by this program. Plaintiff alleges that he is at an increased risk of identity theft, but even if his identity was stolen, he has access to $1,000,000 of zero-deductible coverage. *See* Anderson Decl. ¶ 6. This insurance covers not only losses associated with identity theft

---

[3] The Court may examine this notice as part of the facial attack on Plaintiff's standing because it is embraced by Plaintiff's Complaint. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017); Compl. ¶ 86.

and fraud, but also other consequences of such fraud, including professional fees and identify theft recovery services. Anderson Decl. Ex. 2 at 14.

When a defendant provides redress for plaintiff's alleged injuries before he files suit, federal courts regularly hold the plaintiff lacks standing for such claims, on grounds there is no concrete injury alleged that has not already been fully redressed. For instance, several courts have so held when, before filing suit, a plaintiff has received a full refund of the alleged monetary loss. *See, e.g.*, *Luman v. Theismann*, 647 F. App'x 804, 806-07 (9th Cir. 2016) (concluding putative class representative did not have standing where he received full refund to his credit card account prior to filing lawsuit because he demonstrated no injury-in-fact); *Hill v. LLR, Inc.*, No. CV-18-120-GF-BMM-KLD, 2020 WL 9770748, at *2 (D. Mont. Nov. 16, 2020) (finding that where a pre-suit refund exceeded the amount of principal and interest potentially due, the plaintiff lacked a concrete injury, depriving her of standing); *Dress v. Cap. One Bank (USA), N.A.*, No. 1:19-CV-00343, 2019 WL 3451304, at *3-4 (E.D. Va. July 30, 2019) (plaintiff lacked standing where prior to filing suit she was offered and accepted full refund of allegedly inflated finance charges on credit card), *aff'd*, 849 F. App'x 55 (4th Cir. 2021); *Amirhamzeh v. Chase Bank USA, N.A.*, No. CV-13-00527-BRO FFMX, 2014 WL 641705, at *7 (C.D. Cal. Feb. 7, 2014) (pre-litigation refund exceeding alleged wrongful charges and interest "mooted" plaintiff's claims).[4]

---

[4]  Indeed, some courts have found a plaintiff lacked standing when a full refund was offered or made available prior to suit, even if the refund was rejected or not accepted. *See Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 361 n.10 (3d Cir. 2013) (affirming dismissal for lack of standing where the defendant had offered a full refund of the

When considering whether pre-litigation redress may deprive a plaintiff of standing, this Court acknowledged the recent series of cases standing for the "general proposition [that] when a defendant offers a plaintiff a full refund for all of its alleged loss prior to the commencement of litigation, this refund offer deprives the plaintiff of Article III standing because the plaintiff cannot establish an injury in fact," and then agreed and recognized that "a pre-litigation refund offer for complete relief could potentially deprive a plaintiff of Article III standing." *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1137 (D. Minn. 2016). In *Johnson*, the plaintiff alleged that defendant Bobcat had "misrepresented the true fuel tank capacity of a skid-loader that he purchased…[and] that the loader had a defective coating and failed to reach the advertised top speed." *Id.* at 1134. He sued under several contract, warranty, tort and statutory consumer fraud theories, seeking to represent a nationwide class of similarly-situated skid loader purchasers. Bobcat argued that its pre-litigation offer of a full purchase price refund deprived the plaintiff of standing. However, this Court held that the refund at issue did not deprive the plaintiff of standing, because the plaintiff had

---

purchase price, but the plaintiff had refused to accept the refund); *see also Harris v. PFI W. Stores, Inc.*, No. SACV192521JVSADSX, 2020 WL 3965022, at *3 (C.D. Cal. Apr. 9, 2020) (finding plaintiff that rejected refund offer lacked standing because the defendant offered its refund prior to the commencement of the suit); *Hardy v. Bed Bath & Beyond, Inc.*, No. 17-22315-CIV, 2018 WL 1272687, at *2 (S.D. Fla. Mar. 9, 2018) (same); *Hamilton v. Gen. Mills, Inc.*, No. 6:16-CV-382-MC, 2016 WL 4060310, at *5 (D. Or. July 27, 2016) ("[B]ecause Hamilton's loss of $15.98 is mooted by General Mills' refund program, he does not have standing to sue because he has not cognizably alleged any other concrete and particularized injury."). Accordingly, even if Plaintiff had not accepted the offer, he would lack standing.

clearly alleged concrete injuries beyond the amount of the refund offered (i.e., specific consequential and incidental damages).  *Id*. at 1137.

This Court has thus recognized the general principle that pre-litigation redress may deprive a plaintiff of standing, unless injuries beyond the redress provided are clearly alleged and sought in the litigation.  Here, Perry has failed to clearly and plausibly allege that he has suffered any cognizable injury-in-fact for standing purposes.  And even if he had, those injuries be covered, and thus fully redressed, by the IDX Privacy Program and identity theft protection insurance provided to him by Bay & Bay.  Lacking such clear allegations showing an unaddressed injury, the Complaint should be dismissed for lack of standing.

## II.    IN THE ALTERNATIVE, PLAINTIFF'S CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

"In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a claim to relief that is plausible on its face."  *WinRed, Inc v. Ellison*, ___ F. Supp. 3d ___, No. CV 21-1575 (JRT/BRT), 2022 WL 228244, at *7 (D. Minn. Jan. 26, 2022) (quotation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The Court construes the complaint in the light most favorable to the plaintiff, accepting the complaint's factual allegations as true and drawing all inferences in the plaintiff's favor."  *Ellison*, 2022 WL 228244, at *7.  However, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice," and the court need not accept them as true. *Iqbal*, 556 U.S. at 678. If, after disregarding conclusory statements, the complaint does not "raise a right to relief above the speculative level," it must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### A. All of Plaintiff's Claims Must Be Dismissed Because He Fails to Plausibly Allege Damages and/or Causation.

All three of Plaintiffs claims fail for lack of any damages caused by the Data Breach. In order to state a claim for negligence (Count I) and negligence per se (Count II), Plaintiff must plausibly allege that he was injured and that the defendant's actions were the cause of the injury. *See Gradjelick v. Hance*, 646 N.W.2d 225, 234 (Minn. 2002) (negligence requires "causation, and damages"; negligence per se requires "the injury suffered was the kind the [statute] was meant to prevent [and] the violation was the proximate cause of the injury or damage"). Similarly, "under Minnesota law, a breach of contract claim [Count III] fails as a matter of law if the plaintiff cannot establish that he or she has been damaged by the alleged breach." *Reuter v. Jax Ltd.*, 711 F.3d 918, 920 (8th Cir. 2013) (cleaned up).

As explained *supra*, Section I, Plaintiff has failed to plead facts sufficient to support the reasonable inference that he suffered any damages that were caused by Bay & Bay's conduct. Accordingly, even if the Court finds that Plaintiff has standing, it should dismiss the Complaint for failure to state a claim. *Cf. In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, No. 14-MD-2586 ADM/TNL, 2018 WL 1189327, at *11-13 (D. Minn. Mar. 7, 2018) (dismissing data breach claims because, although plaintiff had

standing, allegations failed to plead a cognizable injury under Rule 12(b)(6)), *aff'd sub nom. In re SuperValu, Inc.*, 925 F.3d 955 (8th Cir. 2019).

### B. Plaintiff's Negligence Per Se Claim Fails As a Matter of Law.

Plaintiff's negligence per se claim is based on an alleged violation of the unfair practices prong of Section 5 of the Federal Trade Commission Act ("FTC Section 5"). Compl. ¶¶ 53-55, 136-39. As discussed below, this claim fails on two additional, independent grounds: 1) FTC Section 5 cannot form the basis for a negligence per se claim as a matter of Minnesota law, because it fails to provide a sufficiently "fixed standard" of care; and 2) Minnesota law does not recognize a negligence per se claim based on a civil (non-penal) statute that does not provide a private right of action.

### 1. Section 5 of the FTC does not establish a "fixed standard" of care.

To support a negligence per se claim under Minnesota law, a statute must set a "fixed" duty of care. *Zerby v. Warren*, 210 N.W.2d 58, 62 (Minn. 1973). "A per se negligence rule substitutes a statutory standard of care for the ordinary prudent person standard of care, such that a violation of a statute (or an ordinance or regulation adopted under statutory authority) is conclusive evidence of duty and breach." *Gradjelick*, 646 N.W.2d at 231 n.3. As the Supreme Court of Minnesota has explained:

> The only difference between a statutorily imposed duty of care and a duty of care under common law is that the duty imposed by statute is fixed, so its breach ordinarily constitutes conclusive evidence of negligence, or negligence per se, while the measure of legal duty in the absence of statute is determined under common-law principles.

*Zerby*, 210 N.W.2d at 62.

The "fixed standard" serves the core purpose of negligence per se:  to substitute the common law process of a jury determining the standard of care with reference to the "reasonable person" standard, with a legislative judgment that particular specific conduct constitutes a breach of legal duty.  Negligence per se is grounded in institutional comity: if the legislature has determined that particular acts are unlawful, the "judgment of the legislature, as the authoritative representative of the community, takes precedence" over the determinations of individual juries.  Restatement (Third) of Torts: Phys. & Emot. Harm § 14, cmt (c).  Likewise, negligence per se promotes efficiency by eliminating the need for juries to deliberate repeatedly on the same standard of care, which provides clarity as to the status of the law.  *Id.*  However, if a statute does not create standards of care that are any more specific than the common law of negligence generally, it cannot achieve those objectives, and thus cannot form the basis of a negligence per se claim. *See, e.g.*, *Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.*, 883 F.2d 1210, 1222 (3d Cir. 1989); *Struve v. Payvandi*, 740 N.W.2d 436, 443 (Iowa 2007); *Heath v. La Mariana Apts.*, 180 P.3d 664, 666-67 (N.M. 2008).  And so, for a statute to give rise to a claim of negligence per se, the law needs to supply a fixed standard, i.e. "set forth a positive and definite standard of care whereby a jury may determine whether there has been a violation thereof by finding a single issue of fact." *Boyd v. Moore*, 919 N.E.2d 283, 287 (Ohio Ct. App. 2009) (quotation omitted); *see also Lowdermilk v. Vescovo Bldg. & Realty Co.*, 91 S.W.3d 617, 629 (Mo. Ct. App. 2002).

FTC Section 5 falls far short of establishing a specific and ascertainable standard of conduct.  The statute prohibits "[u]nfair methods of competition" and "unfair or

deceptive acts or practices," but does not define these terms.  15 U.S.C. §§ 44-45.  It is not clear from the statute what constitutes an "unfair method of competition" or "deceptive acts."   This vague and amorphous prohibition cannot establish a fixed standard of care that replaces the common law duty of care.

Indeed, the statute's prohibition is vague and amorphous by design.  Congress "intentionally left development of the term 'unfair' to the Commission rather than attempting to define" any specific practices.  *See Atl. Ref. Co. v. F.T.C.*, 381 U.S. 357, 367 (1965); *Am. Fin. Servs. Ass'n v. F.T.C.*, 767 F.2d 957, 969 (D.C. Cir. 1985) (Congress "expressly declined to delineate" the "particular acts or practices" deemed unfair).   "The Supreme Court has, on more than one occasion, recognized that the standard of unfairness is by necessity, an elusive one, which defies such a limitation." *Orkin Exterminating Co. v. F.T.C.*, 849 F.2d 1354, 1367 (11th Cir. 1988) (quotation omitted); *accord F.T.C. v. Colgate-Palmolive Co.*, 380 U.S. 374, 384-85 (1965). Because FTC Section 5 is intentionally vague and amorphous, it does not delineate the requisite fixed standard of care sufficient to support a claim for negligence per se.  *See In re Brinker Data Incident Litig.*, No. 3:18-CV-686-J-32MCR, 2020 WL 691848, at *9 (M.D. Fla. Jan. 27, 2020); *In re Sonic Corp. Customer Data Sec. Breach Litig. (Fin. Institutions)*, No. 1:17-MD-2807, 2020 WL 3577341, at *6 (N.D. Ohio July 1, 2020). Using FTC Section 5's "unfairness" standard in place of the common law reasonable person standard of care would not simplify the jury's deliberations on the applicable standard of care, and thus would not serve the purposes behind negligence per se.

2. *Plaintiff cannot circumvent Congress's judgment.*

Moreover, an independent basis to dismiss Count II for failure to state a claim is that negligence per se may not be used to circumvent the judgment of the legislature not to provide for private civil enforcement of a civil statutory scheme. As another court in this district has recently recognized, negligence per se cannot be used as an end-run around the fact that the legislative branch does not provide a private right of action to enforce a civil statute. *See Samuel v. Oromia Media Network*, No. 20-cv-1596 (DSD/DTS), 2021 WL 5054480, at *5 (D. Minn. Nov. 1, 2021). There is no private right of action for violation of Section 5; enforcement is entrusted by Congress exclusively to the Federal Trade Commission. *In re SuperValu, Inc.*, 925 F.3d 955, 963-64 (8th Cir. 2019) ("Congress empowered the Commission—and the Commission alone—to enforce the FTCA. Implying a cause of action would be inconsistent with Congress's anticipated enforcement scheme."). Plaintiff cannot create a private right of action when Congress declined to create one. *Cf. id.* ("Illinois is unlikely to recognize a legal duty enforceable through a negligence action arising from the FTCA.").

**C. Plaintiff Fails To Plausibly Allege An Implied Contract Claim.**

In addition to his failure to plead damages discussed above, Plaintiff also fails to state a claim for breach of implied contract under Minnesota law because he does not plausibly allege facts that Bay & Bay entered into an implied contract with him or that he supplied any consideration. Under Minnesota law a contract may only be "implied in fact where the circumstances clearly and unequivocally indicate the intention of the parties to enter into a contract." *State Farm Mut. Auto. Ins. Co. v. Merrill, Tr. for P.B.*,

353 F. Supp. 3d 835, 846 (D. Minn. 2018) (cleaned up), *aff'd*, 952 F.3d 941 (8th Cir. 2020). A plaintiff asserting an implied contract claim still has the full "burden of establishing all essential contractual ingredients." *Id.* This includes the formation of a contract. *Placzek v. Mayo Clinic*, 18 F.4th 1010, 1016 (8th Cir. 2021). To plead contract formation, Plaintiff must adequately allege (1) an exchange of promises, (2) "manifest mutual assent to the exchange," and (3) consideration. *Roulo v. Keystone Shipping Co.*, No. CV 17-5538 (JRT/LIB), 2018 WL 5619723, at *7 (D. Minn. Oct. 30, 2018).

Here, Plaintiff fails to allege sufficient facts to establish any of the elements of contract formation. Plaintiff alleges no facts that, if true, "clearly and unequivocally indicate" Bay & Bay's intention to enter a contract with him to protect his information from third-party cybercriminals. Implied contracts, no less than express ones, require a "meeting of the minds." *State Farm Mut. Auto. Ins.*, 353 F. Supp. 3d at 846. Nowhere does Plaintiff plausibly allege that Bay & Bay made any representations or undertook other conduct that would "clearly and unequivocally indicate" an intent to enter in a contract with Plaintiff to insure his private information against criminal hacking.

Although Plaintiff alleges that in Bay & Bay's Privacy Policy, it promises to undertake "appropriate … security measures," Compl. ¶ 26, the plain language of that policy states that it only applies to Bay & Bay's website and "all products and services offered by Bay & Bay Transportation."[5]  Nowhere in the Complaint does Plaintiff allege

---

[5]      *See Privacy Policy*, Bay & Bay Transportation Services, Inc., https://bayandbay.com/privacy-policy/. Anderson Decl. Ex. 3. The Court may examine this policy because it is referenced in and embraced by Plaintiff's Complaint. *See Zean*, 858 F.3d at 526; Compl. ¶¶ 23-26.

that he accessed the website, much less that he provided information through the site. Nor does he allege that he purchased products or services from Bay & Bay.

What is more, even assuming the Privacy Policy applies to Plaintiff, the language on which he relies is too vague to support an implied contract claim.  In order "[t]o decide whether a contract has been breached, a fact-finder needs reasonably definite terms to interpret and apply."  *Hunt v. IBM Mid Am. Emps. Fed. Credit Union*, 384 N.W.2d 853, 857 (Minn. 1986).  If the language of a document is too vague to constitute a contractual offer, then there is no implied contract.  *See id.*  Whether language is sufficiently specific and definite to satisfy the requirement of a contractual offer is a question of law.  *See, e.g.*, *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 740 (Minn. 2000) (citing *Hunt*, 384 N.W.2d at 856).

In *Hunt*, the Minnesota Supreme Court concluded that an employee handbook stating employee will be terminated for a "serious offense" was too vague to support an implied contract claim.  384 N.W.2d at 857.  In doing so, it found it significant that the manual at issue "neither defines nor gives examples of what is a 'serious offense'" and reasoned "[t]his vagueness falls far short of the specificity necessary for a contractual offer."  *Id.*  The court concluded "[i]f this case were to go to trial, a jury would literally be asked to draft new contractual terms and define 'serious offense.'"  *Id.*

So too here.  The policy's statement that Bay & Bay will take "appropriate" security measures is too vague to constitute a specific and definite offer.  As in *Hunt*, Plaintiff's claims would require that a jury in this case sit down during deliberations and come up with the precise contractual terms of what constitutes "appropriate" cyber

security.  *See id.*  Because "appropriate security" is not sufficiently specific and definite, Plaintiff's implied contract claim fails as a matter of law.  *See Wright v. Capella Univ., Inc.*, 378 F. Supp. 3d 760, 773 (D. Minn. 2019) ("Under Minnesota law, contract formation requires communication of a specific and definite offer, acceptance of that offer, and consideration. Vague language or subjective intentions do not form the basis of a specific and definite offer." (citation omitted)).

Plaintiff also fails to adequately allege consideration.  "Consideration may consist of either a benefit accruing to a party or a detriment suffered by another party," but requires that at least "something of value has passed between the parties."  *Cityscapes Dev., LLC v. Scheffler*, 866 N.W.2d 66, 71 (Minn. Ct. App. 2015) (quotation omitted). Plaintiff alleges only that he "applied for employment" as a driver with Bay & Bay. Compl. ¶ 17.  But he is not suing as an employee (or former employee) of Bay & Bay. Nor is he suing as a customer of Bay & Bay.  It is not clear from the Complaint what consideration Plaintiff provided in exchange for the alleged promise to protect his information from cybercriminals.  He did not provide his labor and services to Bay & Bay as an employee/driver.  Nor did he pay money to Bay & Bay in exchange for shipping services.  Without consideration, there cannot be an implied contract.

Plaintiff's Complaint does not establish the basic elements of contract formation and therefore his implied contract claim fails as a matter of law.

## **CONCLUSION**

Because Plaintiff cannot show that he satisfies Article III standing, Bay & Bay respectfully requests that the Court dismiss the Complaint under Rule 12(b)(1).

Alternatively, because the Complaint fails to state a claim, it should be dismissed under Rule 12(b)(6).

Dated:  April 28, 2022                     SPENCER FANE LLP

                                           By:  */s/ Jessica J. Nelson*
                                               Jessica J. Nelson, #347358
                                               Luke J. Wolf, #0399986
                                               100 South Fifth Street, Suite 2500
                                               Minneapolis, MN 55402
                                               Telephone: (612) 268-7000
                                               Facsimile: (612) 268-7001
                                               jnelson@spencerfane.com
                                               lwolf@spencerfane.com

                                               SPENCER FANE LLP
                                               Thomas W. Hayde (*pro hac vice pending*)
                                               1 North Brentwood Boulevard, Suite 1000
                                               St. Louis, MO  63105
                                               Telephone:  (314) 863-7733
                                               Facsimile:  (314) 862-4656
                                               thayde@spencerfane.com

                                               *Attorneys for Defendant Bay & Bay*
                                               *Transportation Services, Inc.*